3:24-mj-00084

DISTRICT OF OREGON, ss:  AFFIDAVIT OF RYAN R. DONOVAN

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Ryan R. Donovan, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1. I am Special Agent Ryan R. Donovan with the Federal Bureau of Investigation ("FBI") and have been since August 2021, prior to joining the FBI, I served as police officer in Prince William County, Virginia, seven years. During that time, I was assigned as a patrol officer working 9 PM – 7AM, SWAT, and was a school resource officer. My current assignment is to the Transnational Organized Crime and Violent Gangs squad. Since becoming a law enforcement officer, I have received training and/or professional experience in basic narcotic investigations, familiarization with U.S. narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, informant development, Title III investigations, and undercover operations. During the course of my law enforcement career, I have been involved in investigations of numerous federal and state criminal offenses. I have participated in numerous investigations of illicit drug trafficking organizations, ranging from street level dealers to major dealers. These investigations have included the use of confidential sources (CSs), and sources of information (collectively "Sources"); toll records; physical surveillances; and the execution of search warrants. These investigations have also included possession with intent to distribute, and distribution of controlled substances. These investigations have resulted in numerous state and/or federal prosecutions of individuals who have possessed, and or distributed controlled substances, as well as the seizure of those illegal drugs and the proceeds from the sale of those illegal drugs.

**AFFIDAVIT OF RYAN R. DONOVAN**  Page 1

2. I submit this affidavit in support of a criminal complaint and arrest warrants for **SUANI HERNANDEZ-ESCOTO** (herein after referred to as **SUANI**) date of birth 11/xx/1991, **DARWIN PERDOMO-MARTINEZ** (herein after referred to as **PERDOMO-MARTINEZ)** date of birth 10/xx/2001, and **REYNALDO HERNANDEZ-ESCOTO (**herein after referred to as **REYNALDO**) date of birth 08/xx/2005 for:

- Conspiracy to distribute and possess with intent to distribute 400 grams or more of a mixture and substance containing fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C § 846; and,

- Possession with intent to distribute 400 grams or more of a mixture and substance containing fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A).

3. This affidavit is intended to show only that there is sufficient probable cause for the requested complaint and arrest warrants and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Statement of Probable Cause

4. On the morning of May 2, 2024, as part of an ongoing fentanyl trafficking investigation, Investigators established surveillance on the residence located at 6310 SE 92nd

///

Avenue, Portland, Oregon (hereinafter the **Target Residence**).  The location of the Target Residence is below and marked with the red "pin":



5. Shortly after establishing surveillance, Investigators observed a Hispanic female, later identified as to as **SUANI** exit the **Target Residence** and walk Westbound on SE Tolman, heading towards SE 91st Avenue, and approach a Volkswagen Jetta with Oregon license plate 906PQN (hereinafter referred to as Subject Vehicle 3) that was parked next to the curb on SE Tolman, near SE 91st Avenue.[1]  Investigators observed her click the electronic keys to Subject Vehicle 3 and heard the vehicle locks click, but it was unknown if she was unlocking or locking

---

[1] In this ongoing investigation a number of vehicles and phones have been identified as being used by various subjects.  The initial phone was designated Target Cellphone 1 and the initial vehicle of interest was designated as Subject Vehicle 1.  As new vehicles and phones were located they were identified in sequential order as 2, 3, 4 etc.  We have attempted to keep this numbering consistent throughout the investigation.

**AFFIDAVIT OF RYAN R. DONOVAN**                                                                                     **Page 3**

the car. **SUANI** then walked away from Subject Vehicle 3 and then entered the driver seat of a nearby dark colored Toyota Camry with Oregon license plate 104NGP (hereinafter referred to as Subject Vehicle 4) that was also parked next to the curb on SE Tolman near Subject Vehicle 3. **SUANI** then drove Subject Vehicle 4 Eastbound on SE Tolman and into the driveway of the **Target Residence**. **SUANI** then exited Subject Vehicle 4 and walked back into the **Target Residence**.

6.  Shortly thereafter, **SUANI**, a Hispanic male who was later identified as **PERDOMO-MARTINEZ**, and another Hispanic male was later identified as **REYNALDO** all exited the **Target Residence**. **PERDOMO-MARTINEZ** and **REYNALDO** were observed carrying bags, some of which they were seen handing to **SUANI**. The three individuals then started placing the bags inside of Subject Vehicle 4.

7.  After Subject Vehicle 4 was loaded, **PERDOMO-MARTINEZ** entered the driver seat of Subject Vehicle 4, **SUANI** then entered the front passenger seat of Subject Vehicle 4, and **REYNALDO** then entered the rear of Subject Vehicle 4. Subject Vehicle 4 then drove away from the **Target Residence** and over to where Subject Vehicle 3 was parked. Investigators briefly lost sight of Subject Vehicle 4. Less than a minute later, when Investigators reestablished surveillance on Subject Vehicle 4 they observed **REYNALDO**, who had been the backseat passenger in the car, standing on the street and getting into the driver seat of Subject Vehicle 3.

8.  Subject Vehicle 3 then started to drive away from the curb and an Investigator conducted a traffic stop, using police emergency lights, of Subject Vehicle 3 and detained **REYNALDO**. Another Investigator attempted to stop Subject Vehicle 4 but it quickly attempted to elude law enforcement and as it turned down south onto SE 92nd Avenue, Subject

Vehicle 4 ran into and hit another Investigator's vehicle head on. **PERDOMO-MARTINEZ** and **SUANI** tried to get out of Subject Vehicle 4 and run but they were quickly caught by Investigators and detained. This all occurred in front of the **Target Residence**. Subject Vehicle 4 (the vehicle on the left) is depicted below:



9. The **Target** Residence is a duplex containing 6310 SE 92nd Avenue and 6308 SE 92nd Avenue. A resident of 6308 SE 92nd Avenue told Investigators that, when the police activity was occurring, he observed two Hispanic males exit the **Target Residence** and jump over the fence and flee the area.

10. Investigators conducted a protective sweep of the **Target Residence** for officer safety purposes and secured the house as Investigators prepared to apply for a federal search warrant. While investigators were conducting the protective sweep of the **Target Residence**, I

**AFFIDAVIT OF RYAN R. DONOVAN**                                                                                           Page 5

observed in plain view discarded blue gloves, packaging material, and a plastic bag of a chunky white powder which based on my training and experience as well as speaking with other senior narcotic investigators, appeared to be consistent with fentanyl.

11.     An Investigator used Mando, a drug detection trained K-9, to conduct a sniff of Subject Vehicle 4 and Mando gave an alert indicating the presence of narcotics inside the vehicle.[2] Investigators then searched Subject Vehicle 4 and located a large amount of fentanyl powder, as well as packing material, cutting agents (Super Mannitol), and items used in the manufacturing of drugs to include blenders, presses, vices, and cooking supplies. In the truck of Subject Vehicle 4 Investigators found a damaged baking loaf pan containing approximately 326 grams of a white powder that was being compressed by several clamps. This white powdery substance was tested with a Detectachem field test kit and returned positive result for fentanyl, a Schedule II controlled substance. Investigators also located several bags in the rear seat area of Subject Vehicle 4 which contained additional plastic bags containing blocks of a white powdery substance, suspected to be fentanyl. The additional bags of suspected fentanyl weighed approximately 496 grams, 566 grams, 47 grams, and three (3) grams. The substance weighing approximately 496 grams was tested with a Detectachem field test kit and returned a positive

---

[2] Mando is a 5-year-old German Shepherd/Belgian Malinois mix. Mando and his handler (deputy law enforcement officer) are a certified narcotic detection team through the Oregon Police Canine Association (OPCA) with a certification date of April 16, 2024, the Pacific Northwest K9 Association (PNWK9) with a certification date of April 26, 2024, and the International Police Canine Association (IPCA) with a certification date of February 6, 2024. Mando and his handler have participated and completed a 264 hour narcotic detection school. As a team they continually train a minimum of 16 hours a month. Mando is trained to locate and alert on the odor of Cocaine, Methamphetamine, Heroin, and Fentanyl. He is a passive alert dog which means his final response is to down and stare as a passive alert but still will sometimes scratch at the source of odor. Mando has repeatedly proven to be reliable in detecting narcotics.

**AFFIDAVIT OF RYAN R. DONOVAN**                                                                                             **Page 6**

result for fentanyl. The substances weighing approximately 566 grams, 47 grams, and three (3) grams were field tested with a handheld TRUNARC detection system which returned a positive result for fentanyl. The estimated total weight of the fentanyl seized from Subject Vehicle 4 was approximately 1,439 grams of fentanyl powder. Investigators also found and seized $15,374 in U.S Currency from Subject Vehicle 4. Pictures of some of the items seized from Subject Vehicle 4 are pictured below:




///

///

///

**AFFIDAVIT OF RYAN R. DONOVAN**                                                                                   Page 7






///

**AFFIDAVIT OF RYAN R. DONOVAN**                                                                                       **Page 8**

12. Also, while investigators were awaiting a search warrant for the **Target Residence**, we witnessed an Amazon delivery driver arrive at the residence and deliver a parcel. After the search warrant was signed, investigators examined the package and opened it. The package contained a one-kilogram shipment of Super Mannitol, which I know from my training and experience is a common cutting agent for the manufacturing of fentanyl powder. The Amazon shipping label identified **SUANI** as the purchaser of the product and had selected that specific residence for the Mannitol to be shipped to.

13. On May 2, 2024, I applied for and received a search warrant for the **Target Residence** which was signed by the Honorable U.S. Magistrate Judge Youlee Yim You. The warrant was then executed that same day.

14. Within the **Target Residence**, investigators located two blenders with white residue, a C-clamp, blue rubber gloves, and N-95 Masks, as well as other items I know are used to manufacture and distribute fentanyl. On the bathroom counter investigators located a plastic bag containing a chunky white substance, weighing approximately 6.1 grams, which was field tested with a handheld TRUNARC drug detection device and returned a positive result for fentanyl. Located on the bathroom floor was a blender box and sitting on top was a large plastic bag, weighing approximately 84.6 grams, containing a chunky white substance which field tested positive for fentanyl. Investigators also located an Amazon package on the front step of the residence that was addressed to the **Target Residence** in **SUANI**'s name. Investigators could see that the package likely contained a tub in similar shape and size as that of Super Mannitol. Inside that package Investigators located 2.2 lbs. of Sunshine Valley Super Mannitol, which I

///

know is used to "cut" or blend with fentanyl to increase the bulk of a mixture and substance containing fentanyl that is available to sell.

### Interview of SUANI

15. Investigators conducted an interview with **SUANI** in Spanish. An Investigator advised her of her *Miranda* Rights in Spanish, and she stated that she understood them by saying, "Si." During the interview **SUANI** said she arrived in Portland last night from Denver, Colorado and was temporarily staying at 6310 SE 92nd Ave. **SUANI** said she was visiting her boyfriend **PERDOMO-MARTINEZ** and her brother **REYNALDO**. **SUANI** said she intended to leave Portland on Sunday and would travel back to Denver. **SUANI** described being employed as a house cleaner in Denver. **SUANI** told us **PERDOMO-MARTINEZ** lived at 6310 SE 92nd Ave, while **REYNALDO** lived in an unidentified apartment complex nearby. **SUANI** said she knew two other men lived with **PERDOMO-MARTINEZ** at the residence, but she did not know who they were.

16. **SUANI** told us on the morning of May 2, 2024, **REYNALDO** came over to the residence as well as two other men. **SUANI** said she did not know if those men were the same two that live at the residence with **PERDOMO-MARTINEZ**. **SUANI** stated **PERDOMO-MARTINEZ** told her to go get the car and pull it up to the house. **SUANI** said she was told by **PERDOMO-MARTINEZ** that they were going to **REYNALDO'S** apartment. **SUANI** said she did as **PERDOMO-MARTINEZ** asked her and drove Subject Vehicle 4 into the driveway of the house. **SUANI** told us she then assisted in loading bags from the house into the Subject Vehicle 4. **SUANI** said she did not know what was in the bags or why they were loading Subject Vehicle 4 with all of the items.

**AFFIDAVIT OF RYAN R. DONOVAN**                                                                                          Page 10

17.     Investigators noted her statements contradicted what they physically observed on surveillance.  During surveillance, when the bags were being moved from the **Target Residence** to the vehicle, an Investigator saw **SUANI** look inside of the bags.  I know, based on the later search of the bags, that they contained a large amount of fentanyl powder and manufacturing supplies.  The supplies included a baking dish that was being used as a fentanyl kilogram press and manufacturing tool, with multiple vice clamps and purpose-cut plywood.  During surveillance an Investigator also saw **SUANI** examine the kilogram press after it was placed in the trunk of the vehicle by **PERDOMO-MARTINEZ**.  Investigators confronted **SUANI** with the fact that Investigators witnessed her examining and loading the items into the vehicle.  **SUANI** admitted that she did look at the items but maintained that she didn't know what they were.  **SUANI** said she was not a drug dealer, had never dealt drugs, and had never been arrested by the police in the United States before.

18.     Investigators noted her statements contradicted her criminal history.  In researching **SUANI'S** CCH, Investigators noted she was arrested by the Salt Lake City, Utah Police Department in July of 2017.  **SUANI** was subsequently convicted of the felony crime of Possession with Intent to Distribute a Controlled Substance.  **SUANI** additionally had immigration violations in her criminal history.

<u>Interview with PERDOMO-MARTINEZ</u>

19.     Investigators also interviewed **PERDOMO-MARTINEZ**.  Prior to interviewing him he was also advised of his constitutional *Miranda* Rights from a department issued card, and **PERDOMO-MARTINEZ** responded that he understood them by saying "Yes."  It was determined that **PERDOMO-MARTINEZ** spoke some English, but to avoid confusion the bulk

of the interview was conducted in Spanish by an Investigator fluent in Spanish. Investigators asked **PERDOMO-MARTINEZ** what his name was and he responded his name was Hector Castro. It should be noted that **PERDOMO-MARTINEZ** was earlier positively identified by his fingerprints as **PERDOMO-MARTINEZ**. Investigators told **PERDOMO-MARTINEZ** that we knew his name was not Hector, and he did not respond.

20. **PERDOMO-MARTINEZ** stated he did not know what was going on and wasn't involved in drug dealing. **PERDOMO-MARTINEZ** additionally said that subject Vehicle 4, that he had earlier crashed into an investigator with, was not his.

21. Investigators confronted **PERDOMO-MARTINEZ** with observations of him carrying out the kilogram press, from the residence, and placing it in the trunk of the Subject Vehicle 4. **PERDOMO-MARTINEZ** then admitted to carrying bags to Subject Vehicle 4 and said that he did take the kilogram press out of the house, but stated he did not know what it was. **PERDOMO-MARTINEZ** said he was unaware that there were drugs inside of the bags. **PERDOMO-MARTINEZ** would not explain where he was attempting to drive to, or why they put all of the drugs and the press into the car. After some time, **PERDOMO-MARTINEZ** ceased answering questions and would only pray out loud.

22. Investigators later researched **PERDOMO-MARTINEZ'** criminal history and learned the following. **PERDOMO-MARTINEZ** had multiple aliases with variations of the names Hector and Castro in them. **PERDOMO-MARTINEZ** had a criminal history to include being arrested by the Portland Police Bureau for the manufacture/deliver of a controlled substance, the possession of fentanyl, and providing false information to a peace officer on January 27, 2024. **PERDOMO-MARTINEZ** was also arrested in San Francisco, California for

the possession, transportation, and selling of controlled substances and cocaine base in August of 2020. There was no disposition on that court case. He was additionally charged with making a false report by the Denver, Colorado Police Department in June of 2021. **PERDOMO-MARTINEZ** also had an immigration violation in California in May of 2019.

### Interview of REYNALDO

23.    **REYNALDO** was also interviewed after being advised of his constitutional *Miranda* rights in Spanish by a fluent Spanish speaking Investigator and he stated he understood them by responding "Si." The Investigator said a cellphone was recovered from **REYNALDO'S** during his detention. **REYNALDO'S** cellphone was receiving phone calls from a contact labeled as "prison jail." After the phone call rang through, a text message became visible on the home screen of **REYNALDO'S** phone, the text message read something to the effect of "bring the car around so we can put the things in it."

24.    Investigators conducted an interview with **REYNALDO** in Spanish. **REYNALDO** stated the Volkswagen Jetta, that he was stopped with, belonged to his sister **SUANI**. **REYNALDO** said **SUANI** was visiting 6310 SE 92nd Ave where her boyfriend, **PERDOMO-MARTINEZ** lived. **REYNALDO** stated he had recently been involved in drug dealing but was no longer involved in that lifestyle and gave it up a month ago. **REYNALDO** said he was earning money by doing "construction." which he later clarified to mean he was painting cars.

25.    **REYNALDO** said he did not know who the two men were that arrived at 6310 SE 92nd Ave that morning. Prior to the incidents described above, Investigators had observed two men arrive at the **Target Residence**. **REYNALDO** stated he knew **PERDOMO-**

**MATRINEZ** lived with other males at the residence but did not know if they were the same males that arrived that morning. **REYNALDO** said he did not have any contacts in his cellphone that he could order narcotics from.

26. Investigators researched **REYNALDO** criminal history and saw he was arrested in San Francisco, California for the possession and selling of controlled substances and cocaine base in September of 2022. Investigators also saw **REYNALDO** was arrested on March 20, 2024 by the Gresham Police Department for the manufacture/delivery of a controlled substance, failing to carry or present an operator's license, and interfering with a peace officer. **REYNALDO** had an active warrant for his arrest from the Gresham Police Department. **REYNALDO** also had an immigration violation from May of 2021

### Knowledge about Drugs

27. I know that fentanyl is a Schedule II controlled substance and an extremely powerful synthetic opioid that is approximately 100 times more potent than morphine and 50 times more potent than heroin. I know that 2 mg. of fentanyl can be a potentially fatal dose. I know that fentanyl traffickers regularly sell counterfeit blue M30 prescription pills that are manufactured with fentanyl, a Schedule II controlled substance, as well as bulk fentanyl powder. I know a typical user of fentanyl will either buy powdered fentanyl or counterfeit M30 pills that they will then burn it on a piece of tin foil and inhale the fumes. Sometimes a user will simply ingest the pills or inhale the powdered fentanyl. Depending on their level of addiction, I know that a typical fentanyl user buying pills may buy and use between one (1) and 20 pills a day, and sometimes more. I also know that fentanyl addicts on the street do not regularly stockpile large amounts of fentanyl but rather tend to buy a small amount of what they need and then resupply

themselves when they run out.  I know that a user of powdered fentanyl will use it in quantities of less than 1/10 of a gram.  I also know that dealers of pills will often buy pills in bulk quantities and then repackage the pills into smaller quantities.  I know that dealers of powdered fentanyl will often buy fentanyl in larger quantities and then break off and sell it in smaller qualities of a gram or less.  I know that a person possessing over 5 grams of fentanyl powder does not possess the powder for personal use but rather such a quantity indicates that it was possessed for purposes of further distribution.  I also know that finding large quantities of fentanyl in combination with packing material, cutting agents (such as Mannitol), and items used in the manufacturing of drugs to include blenders, presses, vices, and cooking supplies is additional indication that the fentanyl is possessed for purposes of further distribution.

## Conclusion

28.   Based on the foregoing, I have probable cause to believe, and I do believe, that **SUANI HERNANDEZ-ESCOTO, DARWIN PERDOMO-MARTINEZ,** and **REYNALDO HERNANDEZ-ESCOTO** have committed the crimes of:

- Conspiracy to distribute and possess with intent to distribute 400 grams or more of a mixture and substance containing fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C § 846; and,
- Possession with intent to distribute 400 grams or more of a mixture and substance containing fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A).

///

///

I therefore request that the Court issue a criminal complaint and arrest warrants for **SUANI HERNANDEZ-ESCOTO, DARWIN PERDOMO-MARTINEZ,** and **REYNALDO HERNANDEZ-ESCOTO.**

29. Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Scott Kerin. AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

<u>By phone pursuant to Fed R. Crim. P. 4.1</u><br>
Ryan R. Donovan, Special Agent<br>
Federal Bureau of Investigation

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at  6:13 p.m.  on May  3 , 2024.

<i>Youlee Yim You</i><br>
HONORABLE YOULEE YIM YOU<br>
UNITED STATES MAGISTRATE JUDGE